JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadngs or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States inSeptember 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CUSTOMERS BANK, ET AL.

**(b)** County of Residence of First Listed Plaintiff  CHESTER
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* Mandracchia & McWhirk LLC, 2024 Cressman Rd., PO Box 1229 Skippack, PA 19474-1229
610-584-0700  Fax: 610-584-0507

## DEFENDANTS
NORRISTOWN BOROUGH, ET AL.

County of Residence of First Listed Defendant  MONTGOMERY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice | | ☐ 791 Empl. Ret. Inc. | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | Sentence | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | |
| | Other | ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education | Conditions of | ☐ 465 Other Immigration | | |
| | | Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983
Brief description of cause:
Deprivation of property rights and interests

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE  4 May 2012

SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Customers Bank, 99 Bridge St., Phoenixville, PA 19460

Address of Defendant: Norristown Borough, 235 Airy St., Norristown, PA 19401

Place of Accident, Incident or Transaction: Norristown, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐  No☒

Does this case involve multidistrict litigation possibilities?     Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations

7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)

7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, Charles D. Mandracchia , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 4 May 2012     _____     52844

Attorney-at-Law     Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4 May 2012     _____     52844

Attorney-at-Law     Attorney I.D.#

CIV. 609 (6/08)

APPENDIX G

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

CUSTOMERS BANK, ET AL. :
           :
    V.       :    Civil Action
           :    No: _____
NORRISTOWN BOROUGH, ET AL. :

## DISCLOSURE STATEMENT FORM

Please check one box:

☒    The nongovernmental corporate party, Customers Bank _____
     , in the above listed civil action does not have any parent corporation and
     publicly held corporation that owns 10% or more of its stock.

❑    The nongovernmental corporate party, _____
     , in the above listed civil action has the following parent corporation(s) and
     publicly held corporation(s) that owns 10% or more of its stock:

_____
_____
_____

4 May 2012 _____  _____
   Date            Signature

      Counsel for:  Plaintiff Customers Bank _____

### Federal Rule of Civil Procedure 7.1 Disclosure Statement

 (a) WHO MUST FILE; CONTENTS.  A nongovernmental corporate party must file
   two copies of a disclosure statement that:
    (1) identifies any parent corporation and any publicly held corporation
      owning10% or more of its stock;  or

    (2) states that there is no such corporation.

 (b) TIME TO FILE; SUPPLEMENTAL FILING.  A party must:
    (1) file the disclosure statement with its first appearance, pleading,
      petition, motion, response, or other request addressed to the court;
      and
    (2) promptly file a supplemental statement if any required information
      changes.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| CUSTOMERS BANK, ET AL. | : | CIVIL ACTION |
| v. | : | |
| BOROUGH OF Norristown, ET AL. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                                        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                                               ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                                             ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (x)


| 4 May 2012 | Charles D. Mandracchia | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-584-0700 | 610-584-0507 | cman@mmattorneys.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

CUSTOMERS BANK, formerly known as          :
New Century Bank, including as Assignee of  :
Beneficial Mutual Bancorp, Inc.             :
99 Bridge Street                            :
Phoenixville, PA 19460                      :
                                            :
and                                         :
                                            :
RYAN SCHOFIELD                              :
4212 Regatta Circle                         :
Norristown, PA 19401                        :
                                            :
and                                         :
                                            :
PAULA DIANE PEYTON                          :
9 Jefferson Crossing Blvd.                  :
East Norriton, PA 19401                     :
                                            :
and                                         :
                                            :
ELLEN FRANK                                 :
517 Lincoln Woods                           :
Lafayette Hill, PA 19444                    :
                                            :
and                                         :
                                            :
THERESA DERBY                               :
913 Woodland Avenue                         :
Norristown, PA 19403                        :
                                            :
and                                         :
                                            :
KELLY DOYLE                                 :
1639 Jones Avenue                           :
Phoenixville, PA 19460                      :
                                            :
and                                         :
                                            :
JASON RAYSOR                                :
4231 Regatta Circle                         :
Norristown, Pa 19401                        :
                                            :
                                            :

and                                        :
                                           :
EDWINA MONAGHAN                            :
1141 Grandview Circle                      :
Pottstown, PA 19464                        :
                                           :
and                                        :
                                           :
KIM CRAYTON                                :
3000 W. Valley Forge Circle                :
Apartment 251                              :
King of Prussia, PA 19406                  :
                                           :
                 Plaintiffs,               :     No.
                                           :
                                           :     JURY TRIAL DEMANDED
                                           :
                                           :
                 v.                        :
                                           :
MUNICIPALITY OF NORRISTOWN                 :
235 Airy Street                            :
Norristown, PA 19401                       :
                                           :
and                                        :
                                           :
SEAN KILKENNY                              :
101 Greenwood Avenue, 5th Floor            :
Jenkintown, PA 19046                       :
                                           :
and                                        :
                                           :
CHARLES PICARD                             :
235 Airy Street                            :
Norristown, PA 19401                       :
                                           :
and                                        :
                                           :
JAYNE MUSONYE                              :
235 Airy Street                            :
Norristown, PA 19401                       :
                                           :
and                                        :
                                           :
TOM O'DONNELL                              :
235 Airy Street                            :
Norristown, PA 19401                       :

2

and                                        :
                                           :
CHRISTOPHER FAZIO                          :
922 Fayette Street                         :
Conshohocken, PA 19428                     :
                                           :
and                                        :
                                           :
JOHN PASQUALE                              :
922 Fayette Street                         :
Conshohocken, PA 19428                     :
                                           :
and                                        :
                                           :
GARY TALBOT                                :
5910 Easton Road                           :
Pipersville, PA 18974                      :
                                           :
and                                        :
                                           :
LYNN BIXLER                                :
235 Airy Street                            :
Norristown, PA 19401                       :
                                           :
and                                        :
                                           :
CHARLES SWEENY                             :
235 Airy Street                            :
Norristown, PA 19401                       :
                                           :
and                                        :
                                           :
WALTER WYCKOFF                             :
335 W. Marshall Street                     :
Norristown, PA 19401                       :
                                           :
and                                        :
                                           :
JANE DOES/JOHN DOES NOS. 1-50              :
235 Airy Street                            :
Norristown, PA 19401                       :
                Defendants.                :
_____        :

## **COMPLAINT**

Plaintiffs Customers Bank, formerly known as New Century Bank, including as Assignee of Beneficial Mutual Bancorp, Inc., Ryan Schofield, Paula Diane Peyton, Ellen Frank, Theresa Derby, Kelly Doyle, Jason Raysor, Edwina Monaghan, and Kim Crayton bring this action against Defendants Municipality of Norristown, Sean Kilkenny, Charles Picard, Jayne Musonye, Tom O'Donnell, Christopher Fazio, John Pasquale, Gary Talbot, Lynn Bixler, Charles Sweeny, Walter Wyckoff, and Jane Does/John Does Nos. 1-50, and in support thereof aver as follows:

## PARTIES

1.      Plaintiff Customers Bank ("Customers"), formerly known as New Century Bank, including as Assignee of Beneficial Mutual Bancorp, Inc., is a Pennsylvania banking corporation with a place of business at 99 Bridge Street, Phoenixville, Chester County, Pennsylvania 19460.

2.      Plaintiff Ryan Schofield is an individual with an address at 4212 Regatta Circle, Norristown, PA, and who owns a residential condominium at 770 Sandy Street, Norristown, PA.

3.      Plaintiff Paula Diane Peyton is an individual with an address at 9 Jefferson Crossing Blvd., East Norriton, PA 19401, and who owns a residential condominium at 770 Sandy Street, Norristown, PA.

4.      Plaintiff Ellen Frank is an individual with an address at 517 Lincoln Woods, Lafayette Hill, PA, and who owns a residential condominium at 770 Sandy Street, Norristown, PA.

5.      Plaintiff Theresa Derby is an individual with an address at 913 Woodland Avenue, Norristown, PA, and who owns a residential condominium at 770 Sandy Street, Norristown, PA.

6.      Plaintiff Kelly Doyle is an individual with an address at 1639 Jones Avenue, Phoenixville, PA, and who owns a residential condominium at 770 Sandy Street, Norristown, PA.

7.      Plaintiff Jason Raysor is an individual with an address at 4231 Regatta Circle, Norristown, PA, and who owns a residential condominium at 770 Sandy Street, Norristown, PA.

8.      Plaintiff Edwina Monaghan is an individual with an address at 1141 Grandview Circle, Pottstown, PA, and who owns a residential condominium at 770 Sandy Street, Norristown, PA.

9.      Plaintiff Kim Crayton is an individual with an address at 3000 W. Valley Forge Circle, Apartment 251, King of Prussia, PA 19406, and who owns a residential condominium at 770 Sandy Street, Norristown, PA. (Plaintiffs Schofield , Peyton, Frank, Derby, Doyle, Raysor, Monaghan and Crayton are referred to, collectively, as the "Homeowners".)

10.     Defendant Municipality of Norristown ("Municipality" or "Norristown") is a municipality under Pennsylvania law with its administrative office located at 235 Airy Street, Norristown, PA 19401.

11.     Defendant Sean Kilkenny is an attorney licensed to practice law in Pennsylvania, with an office address at 101 Greenwood Avenue, 5th Floor, Jenkintown, PA 19046, who at all times relevant to the matters in this Complaint was Solicitor for Norristown.

12.     Defendant Charles Picard is an individual, with a business address at 235 Airy Street, Norristown, PA 19401, who at all times relevant to the matters in this Complaint was employed by Norristown, and was Norristown Code Enforcement Department Supervisor and Acting Building Inspector.

13.    Defendant Jayne Musonye is an individual, with a business address at 235 Airy Street, Norristown, PA 19401, who at all times relevant to the matters in this Complaint was employed by Norristown and was Norristown Director of Planning and Community Development and Director of Building Department.

14.    Defendant Tom O'Donnell is an individual, with a business address at 235 Airy Street, Norristown, PA 19401, who at all times relevant to the matters in this Complaint was employed by Norristown and was Norristown Fire Chief.

15.    Defendant Christopher Fazio is an individual, with a business address at 922 Fayette Street, Conshohocken, PA 19428, and who at the times relevant to the matters in this Complaint was an engineer with Remington, Vernick and Beach Engineers with regard to the subject premises.

16.    Defendant John Pasquale is an individual, with a business address at 922 Fayette Street, Conshohocken, PA 19428, and who at the times relevant to the matters in this Complaint was an engineering inspector with Remington, Vernick and Beach Engineers with regard to the subject premises.

17.    Defendant Gary Talbot is an individual, with a business address at 5910 Easton Road, Pipersville, PA 18974, and who at the times relevant to the matters in this Complaint was the individual identified as Special Inspector for the subject condominium project.

18.    Defendant Lynn Bixler is an individual, with a business address at 235 Airy Street, Norristown, PA 19401, who at certain times relevant to the matters in this Complaint was employed by Norristown and was a Building Inspector and BCO for Norristown.

19.    Defendant Charles Sweeny is an individual, with a business address at 235 Airy Street, Norristown, PA 19401, who at the times relevant to the matters in this Complaint was employed by Norristown and was the Norristown Fire Marshall.

20.    Defendant Walter Wyckoff is an individual, with a business address at 335 W. Marshall Street, Norristown, PA 19401, who at the times relevant to the matters in this Complaint was the design professional of record for the subject condominium project.

21.    Defendants Jane Does/John Does Nos. 1-50 are individuals, with a business address at 235 Airy Street, Norristown, PA 19401, who at all times relevant to the matters in this Complaint were employed by Norristown and who signed permits, Use and Occupancy Certificates and/or other documents relating to the construction of the condominium building located at 770 Sandy Street, Norristown, PA which is the subject of this Complaint.

## JURISDICTION

22.    This Court has subject matter jurisdiction pursuant to (a) 28 U.S.C. §1331, because this case arises under the Constitution and laws of the United States; (b) 28 U.S.C. §1343 because this action seeks redress and damages for violation of 42 U.S.C. §1983 and, in particular, the due process provisions of the United States Constitution, including the rights protected in the Fifth and Fourteenth Amendments thereof; and (c) over causes of action under state law pursuant to federal pendant jurisdiction.

## VENUE

23.    Venue is appropriate in this judicial district under 28 U.S.C. §1391(b), because Defendant Norristown is in Montgomery County, Pennsylvania, within this judicial district, and the events giving rise to Plaintiffs' claims took place within this judicial district.

## FACTS

24.    As of June 9, 2006, Fazio Properties Rittenhouse Club, LLC ("Fazio Properties Rittenhouse"), a Pennsylvania limited liability company, was the owner of record of the real property located at 770 Sandy Street, Norristown, PA (the "Property").

25.    On June 9, 2006, St. Edmond's Federal Savings Bank ("St. Edmond's") entered into a Loan and Security Agreement regarding a revolving refinancing and construction loan the "Loan") in an aggregate amount of up to Two Million Five Hundred Thousand Dollars ($2,500,000.00) made available to Fazio Properties Rittenhouse for commercial purposes, specifically to refinance an existing loan on the Property and convert it into twenty-six residential condominium units.

26.    In connection with the Loan Fazio Properties Rittenhouse executed and delivered a Promissory Note (hereinafter the "Note") in favor of St. Edmond's in the principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00).  As security for the Loan and the Note, Fazio Properties Rittenhouse executed and delivered a mortgage upon the Property in favor of St. Edmond's (the "Mortgage").

27.    The Mortgage was and is a valid first lien purchase money mortgage on the Property, and at the time the Mortgage was delivered to the Bank and recorded Fazio Properties Rittenhouse owned fee simple title to the entirety of the Property.

28.    After the execution and delivery of the Mortgage, by Declaration of Condominium recorded on November 15, 2006 with the Recorder of Deeds, Montgomery County, at Deed Book 5624, Page 00270-00343, Fazio Properties Rittenhouse submitted the Property to the provisions of the Pennsylvania Uniform Condominium Act, as amended, and created with respect to the Property a flexible condominium to be known as Rittenhouse Club Condominiums (the "Condominium").

8

29.     Fazio Properties Rittenhouse subsequently developed the Property by constructing thereon a residential condominium project consisting of twenty six residential condominium units (the "Condominium Building").

30.     On or about April 30, 2007, plaintiff Ryan Schofield purchased a residential condominium unit, Unit 301, at the Property, pursuant to a mortgage loan.

31.     On or about April 30, 2007, plaintiff Paula Diane Peyton purchased a residential condominium unit, Unit 304, at the Property, pursuant to a mortgage loan.

32.     On or about April 30, 2007, plaintiff Ellen Frank purchased a residential condominium unit, Unit 206, at the Property, pursuant to a mortgage loan.

33.     On or about August 7 2007, Plaintiff Theresa Derby purchased a residential condominium unit, Unit 305, at the Property, pursuant to a mortgage loan.

34.     On or about April 25, 2007, plaintiff Kelly Doyle purchased a residential condominium unit, Unit 302, at the Property, pursuant to a mortgage loan.

35.     On or about August 7, 2007, plaintiff Jason Raysor purchased a residential condominium unit, Unit 300, at the Property, pursuant to a mortgage loan.

36.     On or about January 9, 2005, plaintiff Edwina Monaghan purchased a residential condominium unit, Unit 404, at the Property.

37.     On or about May 23, 2007, plaintiff Edwina Monaghan purchased a residential condominium unit, Unit 202, at the Property, pursuant to a mortgage loan.

38.     The units which Fazio Properties Rittenhouse conveyed to third parties with St. Edmond's consent were paid down and closed upon by the purchasers thereof from April 30, 2007 through August 21, 2008.

39.    Customers made four loans to purchasers of units at the Condominium Building
and obtained first mortgages on these units:

a)    mortgage loan to Orchard Hill Crossing, LLC on 8/10/07 regarding Unit 207
b)    mortgage loan to Fazio Properties, LLC on 8/10/07 regarding Unit 203
c)    mortgage loan to Orchard Hill Crossing, LLC on 8/20/08 regarding Unit 200
d)    mortgage loan to R. Bruce Fazio on 8/10/07 regarding Unit 400

40.    St. Edmond's retained a first mortgage interest on 14 of the condominium units at
the Condominium Building.

41.    Fazio Properties Rittenhouse defaulted under the Loan, and as a result, St.
Edmond's filed a complaint in confession of judgment in the Montgomery County Court of
Common Pleas, docketed at No. 2010-05598, pursuant to which a judgment was entered in favor
of St. Edmond's and against Fazio Properties Rittenhouse in the amount of $2,457,172.62, dated
February 24, 2010.

42.    Beneficial Mutual Bancorp, Inc. ("Beneficial") succeeded to the interest and
rights of St. Edmond's in the Loan and the Mortgage, by operation of law.

43.    Beneficial assigned its interest and rights in the Loan, the Mortgage and the
judgment against Fazio Properties Rittenhouse to Customers, effective as of May 4, 2012.

44.    As of May 4, 2010, St. Edmond's was collecting rents from a number of tenants
of the unsold condominium units owned of record by Fazio Properties Rittenhouse.

45.    After the close of business on May 4, 2010, defendant Kilkenny sent to counsel
for St. Edmond's a notice of condemnation of the Condominium Building which the
Municipality intended to serve on Fazio Properties Rittenhouse on May 5, 2010.

46.    On May 18, 2010, Senior Judge Nicholas of the Montgomery County Court of
Common Pleas heard over four hours of testimony and argument. He then granted the
Municipality's motion to condemn the Property as a threat to health, safety and welfare, based on

severe structural deficiencies and numerous egregious code violations, and directed the residents of the Condominium Building to vacate the Property by no later than May 21, 2010.

47.    On June 22, 2010, Keystone Municipal Services, Inc. issued a Final Report (the "Keystone Audit Report") regarding the independent audit of the permit issuance, inspection procedures and issuance of Use and Occupancy Certificates for the Condominium Building.  The audit was commissioned by Norristown.

48.    Since April 10, 2004, Norristown has been an "opt-in" municipality, meaning that it administers and enforces the Pennsylvania Uniform Construction Code ("UCC") among other applicable codes and provisions.

49.    The Keystone Audit Report found that, in violation of the UCC, the Municipality's original General Building Permit for the Condominium Building was signed by a secretary and not by a Certified Code or Building Department Representative.

50.    It is mandatory under the UCC that this permit, and all Use and Occupancy Certificates, be signed by a Certified Building Code Official ("BCO").

51.    According to the Keystone Audit Report, signatures by secretaries on permit applications, inspections, and certificates of occupancy was common practice during the time period relevant to matters in this Complaint.

52.    It is mandatory under the UCC that Norristown, as an opt-in municipality, appointed a BCO to oversee enforcement of the UCC.

53.    As set forth in the Keystone Audit Report, in violation of the UCC, Norristown operated without a BCO for most of the time during the construction of the Condominium Building (from late 2006, with the exception of a short time in 2007, until a third party agency was finally retained years later).

54.     As set forth in the Keystone Audit Report, aside from Inspector Picard, who was temporarily grandfathered during the time in question as "Acting Building Inspector," Norristown lacked any Certified Inspectors.  Additionally, at several stages during the project, Inspector Picard himself expressed that he did not feel qualified to perform the inspections for all phases of the construction.

55.     The inspections of the Condominium Building were mandatory.

56.     The Municipality retained Remington, Vermick and Beach ("RVB") although the firm also lacked a Certified BCO.  According to the Keystone Audit Report, Norristown claimed that the firm was there to perform inspections, but RVB stated it was not performing building inspections and was hired simply as a "second pair of eyes."  Defendants Fazio and Pasquale were employees of RVB with regard to the Condominium Building project.

57.     From the commencement of the project, inspection reports were either insufficient or missing altogether.

58.     The Keystone Audit Report concluded that required special inspections were never performed.  Defendant Talbot was identified in the project documentation as the Special Inspector.

59.     The Keystone Audit Report found that in violation of the UCC and other applicable codes and provisions, Fire Suppression Plans were not properly reviewed.

60.     As set forth in the Keystone Audit Report, the Fire Suppression Plans were not reviewed by someone certified under the UCC, and the Fire Suppression Permit was not signed by a BCO – as was mandatory under the UCC.  Instead, this permit was signed by a secretary with Inspector Picard's name.

61.     As set forth in the Keystone Audit Report, in violation of the UCC and other applicable codes and provisions, the Fire Alarm system permit was not properly signed by a

BCO – as was mandatory under the UCC, and the permit application was not submitted until after the fire alarm system was installed *and* until 3 months after the structure was occupied. This permit was signed by a secretary with the name of Fire Chief O'Donnell.

62.    Minimum required inspections were not performed and the inspections that were performed were not performed by certified inspectors, according to the Keystone Audit Report.

63.    As set forth in the Keystone Audit Report, inspections mandated and otherwise required to have been performed but which were not performed include, but are not limited to the following:

Footings – To be performed, prior to the placement of concrete, when subsoil excavation is complete, all forms and reinforcement are in place, and depth markings defined. All footings must be trenched or formed.

Wall Forms – To be performed, prior to the placement of concrete, when all concrete forms and all reinforcement are in place and footings keys and/or dowels are visible.

Masonry – To be performed while masonry is being laid and reinforcing is being installed.

As Built Foundation – To be performed as soon as the physical first floor and garage floor elevation can be field verified.

Foundation Waterproofing/Dampproofing – To be performed when all exterior walls are sealed in accordance with specific manufacture specification and installation instructions.

Backfill – To be performed when the exterior foundation drains, (with clean stone base, clean stone cover and filter cover) are in place, and all foundation anchor straps/bolts are installed.

Under-Slab Rough Plumbing/Mechanical – To be performed, prior to the placement of concrete, when all DWV, water supply piping and HVAC piping is installed, and all appropriate line tests and piping protection are in place.

Concrete Slabs Base - To be performed, prior to the placement of concrete, when the clean stone base, insulation boards, 6 mil vapor barrier, and depth markings are in place.

Wall and Floor Sheathing – To be performed when all structural wall and floor sheathing, insulation sheathing and wind bracing is in place and all fastenings are applied in accordance with the appropriate fastening schedules.

Firewalls – To be performed when firewall components, (i.e. clips, anchors, screws, fire blocking, fire stopping, fire caulking, etc.) are installed in accordance with manufacture's specifications.

Rough Plumbing - Each Unit and Common Areas- To be performed when all potable and DWV lines are in place, properly protected and anchored and line tests applied.

Rough Electric – Each Unit and Common Areas- A rough electric inspection sticker from a qualified electrical inspection agency shall be in place at time of the framing inspection.

Rough Mechanical – Each Unit and Common Areas-To be performed when all ductwork is installed and secured.

Framing – Each Unit and Common Areas- To be performed when all framing is complete and secured in accordance with the appropriate fastening schedule and ALL floors are accessible by way of code approved stairs.

Rough Sprinkler – Each Unit and Common Areas-To be performed when all piping is installed and a line test is in place.

Insulation – Each Unit and Common Areas- To be preformed when all insulation batts, vapor barriers and baffles are in place.

Fire Code Drywall – Each Unit and Common Areas-To be performed on ALL fire rated assemblies.  Where multiple layers of drywall are installed, each successive layer shall be inspected.

Fire Alarm – Each Unit and Common Areas-To be performed on ALL alarms are in place and activated and any other tests/inspections as required by the building inspector or fire marshal.

Water/Sewer/Suppression Service – To be performed when the stone bed, piping and line tests are in place and foundation walls have been mortared and waterproofing is applied.

Final Sprinkler - Each Unit and Common Areas- To be performed prior to final occupancy and includes a flow test and any other tests/inspections as required by the building inspector or fire marshal.

Final Electric – Each Unit and Common Areas- A final electric inspection sticker from a qualified electrical underwriting agency shall be in place at time of the final occupancy inspection.

ADA Compliance – To be performed after all accessibility elements have been installed.

Elevator – To be performed by the Department of Labor and Industry in accordance with the UCC with a final report provided to the community.

Final Occupancy – Each Unit and Common Areas-To be performed when all construction activity is complete and prior to any type of occupancy and/or use of the structure being established.

64.     Despite the project's permit and inspection process being rife with insufficiencies and outright violations, Use and Occupancy Certificates inspections for the property were performed from April 7, 2007 to July 11, 2007 for Units 202, 203, 204, 207, 300, 303, 305, 400, 401, 402, 403, 404, and 405.

65.     As set forth in the Keystone Audit Report, for a number of units Inspector Picard did not perform the final inspection.   Instead, such inspections were performed by representatives from the Code Department not the Building Department, who were not qualified or trained as building inspectors.  That violated the mandate of the UCC.

66.     As set forth in the Keystone Audit Report, Use and Occupancy Certificates were subsequently issued, but only one was signed by Inspector Picard.  The rest were signed by

14

secretaries.

67.    Inspector Picard was not qualified to issue any Use and Occupancy Certificates. Under the UCC, it is mandatory that only a Certified BCO can perform this duty. He was not a certified BCO and therefore the Certificates of Use and Occupancy for the Condominium Building were in violation of the UCC.

68.    On information and belief, the Use and Occupancy Certificates were issued at the direction of Norristown's Solicitor, defendant Kilkenny.

69.    As set forth in the Keystone Audit Report, there was a meeting on March 20, 2007, involving the Municipality's Solicitor and senior Municipality officials and Bruce Fazio (the developer of the Condominium Building) and his attorney, at which Solicitor Kilkenny determined that the Municipality could issue Use and Occupancy Certificates so long as the Fire Chief was satisfied and all the fire and life safety issues were addressed.

70.    As set forth in the Keystone Audit Report, Inspector Picard believed that "this was a mandate from the municipal solicitor and he and Fire Chief O'Donnell were being directed by Mr. Kilkenny to issue the Use and Occupancy Certificates."

71.    As set forth in the Keystone Audit Report, on April 17, 2007, Fire Chief O'Donnell sent an email to Inspector Picard and Director of Planning Musonye stating that he "had concerns with fire fighting efforts within an occupied building that was still under construction".

72.    As set forth in the Keystone Audit Report, on April 21, 2007, the Fire Department's Batallion Chief Remillard inspected the Property for the purpose of checking "outstanding items that must be completed before a Use and Occupancy Permit could be issued". Following this inspection, the Batallion Chief signed a Suppression System pressure test form labeled "Final Inspection", but according to the Batallion Chief the words "Final Inspection" were not on the document when he signed it.

73.    Under the UCC and other applicable code(s), Use and Occupancy Certificates must be issued for all common areas prior to the issuance of any Use and Occupancy Certificates for individual units.  These areas are an essential component to the path of egress from the structure.  As set forth in the Keystone Audit Report, a Use and Occupancy Certificate for the common areas (garage, halls, stair towers and roof deck) was never issued, in violation of the UCC.

74.    In the latter half of 2007, numerous deficiencies were identified with regard to the Condominium Building.  On information and belief, after correspondence from the attorney for the developer and Solicitor Kilkenny, additional Use and Occupancy Certificates were issued by Norristown for units in the Condominium Building, in violation of the UCC, without deficiencies in the Condominium Building being remedied.

75.    By January 2010, twenty-three (23) of the twenty-six (26) units were occupied by either owners or tenants.

76.    As set forth in the Keystone Audit Report, employees of Norristown were assigned to tasks relating to inspection and permitting of the Condominium Building that they were not trained, qualified or certified to perform.

77.    The Keystone Audit Report concluded that Norristown's building department was "inadequate, untrained, and unfamiliar with the requirements associated with a project of this scope and the requirements of the UCC for PA."  Norristown and the other defendants knew and/or should have known and/or been aware of this.

78.    As set forth in the Keystone Audit Report, the Building Department was being supervised by Ms. Musonye, a department head who was not qualified under the UCC and had no understanding of the process or enabling legislation associated with the issuance of permits, performance of inspections or the issuance of Use and Occupancy Certificates.

79.     Defendants improperly failed to inspect the Condominium Building and improperly issued Use and Occupancy Certificates, in violation of the UCC. As set forth in the Keystone Audit Report, and on information and belief, this was because the Municipality desired to accommodate the developer in connection with completion of the Condominium Building and desired to have a new successful housing project in Norristown to provide housing sought by demographically desirable professionals.

80.     As set forth in the Keystone Audit Report, staff of the Municipality believed their role regarding the Condominium Building inspection and permitting process was "taken over by the municipal solicitor and Use and Occupancy Certificates were issued without conditions associated with or time frames provided for finishing outstanding portions of the structure."

81.     The Municipality was ordered by Judge Silow of the Montgomery County Court of Common Pleas to remediate the deficiencies in the Condominium Building and seek recovery from the Fazio entities named as defendants in the Municipality's condemnation action in that Court.

82.     Judge Silow denied the Municipality's motion for relief requiring that St. Edmond's be responsible for the cost of remediation efforts for the Condominium Building, or that such remediation costs "prime" St. Edmond's Mortgage regarding the Property.

83.     Norristown has engaged in remediation of the deficiencies at the Condominium Building, but has not completed such remediation.

84.     The condemnation of the Property has not been lifted, and the residents of the Condominium Building, including the Homeowners, have been forced to vacate the Building since May 21, 2010, or approximately two years.

85.     The actions of the defendants toward the plaintiffs with regard to the Condominium Building as opposed to others with property interests in Norristown constitute

17

disparate treatment as to similarly situated persons without rational basis in violation of the Equal Protection Clause of the United States Constitution.

86.     The Homeowners have suffered substantial damages, including having to pay the mortgage and/or taxes and other costs on their condemned units while being precluded from living in the units and having to pay substantial costs to live elsewhere, due to the condemnation of the Condominium Building by Norristown as a result of its own failures and violations of law (and of its agents, employees and representatives) and the failure to complete remediation.

87.     Customers cannot foreclose on its mortgages on the four units for which it financed the purchase or execute on those units as collateral, even though the mortgages are in default, due to the condemnation of the Condominium Building by Norristown as a result of its own failures and violations of law (and of its agents, employees and representatives) and the failure to complete remediation.   As a result Customers has suffered substantial damages.

88.     Customers cannot execute on the units which are collateral for the Loan under the Mortgage given to St. Edmond's, to which it has the rights and interest by assignment, even though there is a valid judgment with regard to the Loan, due to the condemnation of the Condominium Building by Norristown as a result of its own failures and violations of law (and of its agents, employees and representatives), and the failure to complete remediation.   As a result Customers has suffered substantial damages.

89.     As a result of the defendants' acts and omissions, Customers has suffered damages including loss of rents for units in the Building, diminished market value of the units, lost opportunity costs, tax charges and carrying costs, additional damage to the units due to Norristown's remediation efforts, and attorney's fees.

90.    Norristown also has filed municipal lien claims against certain Fazio-related entities which Norristown claims take priority over or prime St. Edmond's Mortgage and Customers' mortgages on the four units it financed the purchase of. Norristown is improperly and outrageously seeking to make Customers pay for the costs of remediation due to the condemnation of the Condominium Building by Norristown as a result of its own failures and violations of law (and of its agents, employees and representatives), which constitutes additional damages to Customers, including attorney's fees.

### COUNT I – 42 U.S.C. §1983

91.    The allegations contained in the preceding paragraphs of the Complaint are incorporated herein by reference as if fully set forth at length.

92.    Pursuant to 42 U.S.C. §1983, the plaintiffs seek injunctive and declaratory relief, compensatory and punitive damages, and such other appropriate legal and equitable relief as is permitted under the aforesaid statute.

93.    The statements, acts and omissions of Norristown's agents, representatives, servants and employees (including without limitation the individual defendants) who acted under explicit and implicit instructions and supervision, during the pertinent periods herein, constitute the policy and practice of Norristown.

94.    The actions of the individual defendants and other agents, representatives, servants and employees of Norristown relative to the inspection, permitting and Use and Occupancy Certification of the Property were taken under color of state law.

95.    Norristown, via deliberate indifference that was so egregious as to shock the conscience or an ordinary, reasonable and prudent person, failed to adequately train and/or supervise the persons responsible for the issuance of permits, performance of inspections or the issuance of Use and Occupancy Certificates in connection with the Condominium Building.

96.    It was the policy and practice of the Municipality at the relevant times under this Complaint for secretaries and other uncertified persons to sign permits and Use and Occupancy Certificates, in violation of the UCC and other applicable codes and law.

97.    It was the policy and practice of the Municipality at the relevant times under this Complaint for uncertified and/or unqualified persons to conduct building inspections, in violation of the UCC and other applicable codes and law, and which equates to deliberate indifference that was so egregious as to shock the conscience or an ordinary, reasonable and prudent person.

98.    In directing the issuance of the Use and Occupancy Certificates for the Condominium Building, defendant Kilkenny was determining and/or setting the policy of the Municipality.

99.    Defendants, and each of them, failed to conduct required inspections, failed to conduct inspections by qualified persons, and issued permits and Use and Occupancy Certificates for the Condominium Building, which caused the Building to be constructed in an improper, incomplete, unsafe and structurally deficient fashion, and ultimately to be subjected to condemnation.

100.    Defendants' actions, conduct and omissions as aforesaid constitute an unlawful taking and deprivation of Plaintiffs' property rights under the Fifth and Fourteenth Amendments of the United States Constitution.

101.    Defendants' actions, conduct and omissions as aforesaid constitute an unlawful taking and deprivations of Plaintiffs' property rights in violation of the Equal Protection Clause of the United States Constitution.

102.    The conduct of the Municipality, including with regard to seeking to prime the Mortgage of St. Edmond's to which Customers has succeeded and Customers' mortgages on the four units for which it financed the purchase, as to the remediation costs of the Municipality, and

not other mortgages or property interests, constitutes disparate treatment of Customers and similarly situated persons with no rational basis and in violation of the Equal Protection Clause of the United States Constitution.

103.    The actions and omissions of the Defendants as set forth above, which equate to deliberate indifference that was so egregious as to shock the conscience or an ordinary, reasonable and prudent person, caused Plaintiffs to suffer damages, including economic loss and unlawful deprivation of property rights and interests.

WHEREFORE, Plaintiffs seeks damages and legal and equitable relief in connection with Defendants' improper conduct, in their capacities of and as agents, servants and employees of Defendant Municipality of Norristown, as well as in their individual and personal capacities, and specifically prays that the Court grant the following relief to Plaintiffs by:

(a)    declaring the acts and practices complained of herein to violate Plaintiffs' civil rights pursuant to 42 U.S.C. §1983;

(b)    declaring the Defendants to have engaged in a civil conspiracy under Pennsylvania law;

(c)    enjoining and permanently restraining the violations alleged herein;

(d)    entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(e)    awarding compensatory damages to make the Plaintiffs whole for all losses Plaintiffs have suffered or may suffer as a result of Defendants' improper conduct;

(f)    awarding Plaintiffs the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees;

(g)    awarding the Plaintiffs punitive damages to the extent warranted under applicable law, and,

(h)    granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## COUNT  II- FRAUD

104.    The allegations contained in the preceding paragraphs of the Complaint are incorporated herein by reference as if fully set forth at length.

105.    The Defendant(s) issued, and/or caused, and/or directed the issuance of Certificates of Occupancy relative to the Property.

106.    Plaintiffs, and each of them, in an ordinary, reasonable and prudent fashion, accepted the representations inherent in the issuance of said Certificates, i.e, that the premises had been properly and safely constructed, inspected and certified by competent and skilled persons, and could therefore be safely occupied as a residence.

107.    Plaintiffs collectively believe, and therefore aver, that such representations were fraudulent and materially false as follows:

a) the Defendant(s), and each of them, were fully aware and cognizant at and before the time the aforesaid Certificates were issued  that the subject premises had not been inspected by qualified persons;

b) the Defendant(s) , and each of them, were fully aware and cognizant at and before the time the aforesaid Certificates were issued that the subject premises were replete with safety and building code violations and defects, any or all of which served to render the premises unfit for residential habitation.

108.    In justifiable reliance upon the fraudulent and false information provided by the Defendant(s), and their joint and several refusal to disclose the true condition of the premises, Plaintiffs Homeowners purchased units in the Condominium Building, and Plaintiff Customers including via St. Edmond's to whose rights it has succeeded provided financing for the construction and/or purchase of the Property and/or units thereon.

109.    Following occupancy of the premises, Defendant Norristown (including via defendant Kilkenny) facilitated the condemnation of the Property as a result of which the occupants thereof were forced to vacate.

110.    As a direct and proximate result of the fraudulent acts and omissions of the Defendants, and each of them, as aforesaid, Plaintiffs, and each of them, have sustained significant and ongoing losses and damages.

111.    Plaintiffs aver that the acts and omissions of the Defendants, as set forth herein, were outrageous, because of their evil motive and/or their reckless and deliberate indifference to the rights of the Plaintiffs and others similarly situated. As such, Plaintiffs aver that they are also entitled to an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, both jointly and severally, in their capacities as agents, servants and employees of Defendant Norristown Borough, as well as in their individual and personal capacities in an amount deemed fair, just and equitable, exclusive of punitive damages, along with punitive damages, costs, interest and attorneys fees, and such other relief as may be available under law.

## COUNT III - NEGLIGENT BREACH OF FIDUCIARY DUTY

112.    The allegations contained in the preceding paragraphs of the Complaint preceding are incorporated herein by reference as if fully set forth at length.

23

113.    Plaintiffs Homeowners purchased and took possession of units at the Property, and Plaintiff Customers provided substantial financing, as aforesaid, so as to fund the construction of said premises and/or the purchase of units at the Property.

114.    At the time of taking possession receiving the Certificates of Occupancy, Plaintiffs Homeowners understood and accepted the representations implicit in the issuance of said Certificates, i.e., that the premises had been subjected to proper and comprehensive inspection, had fully passed such inspection, that the subject premises had been properly constructed, and were therefore safe for occupancy as a residence.

115.    During all phases of construction, and following the issuance of the aforementioned Certificates, Plaintiff Customers understood and accepted the representations implicit in the issuance of said Certificates, i.e., that the premises had been subjected to proper and comprehensive inspection, had fully passed such inspection, that the subject premises had been properly constructed, and met or exceeded all standard construction and safety code requirements.

116.    Plaintiffs subsequently learned and determined that the Property was replete with construction, fire, health and safety violations, and were therefore unsuitable for occupancy.

117.    On or about May 18, 2010 the Property was condemned by the Court pursuant to motion by Defendant Norristown and all occupants were forced to vacate the Property.

118.    As a result of and in reliance upon Defendants' aforesaid representations, via the false assurance of proper and valid inspection by qualified persons, and then the issuance of the Certificates, Plaintiffs the Homeowners purchased and occupied their respective units at the Property, and Plaintiff Customers provided significant and ongoing financing regarding the Property.

119.    At all times relevant hereto and contrary to what Defendants represented to Plaintiffs, there had been no valid or competent inspection of the premises and/or valid Use and Occupancy Permits, at any time.

120.    Defendants owed a fiduciary duty to Plaintiffs, and the public at large, to properly and correctly inspect the premises during the construction process and before issuing Certificates of Occupancy.

121.    Defendants, in abject violation of his/her/their/its duty to Plaintiffs and the public at large, did not properly and correctly inspect the premises and/or properly issue valid Use and Occupancy Certificates, but instead did so negligently, carelessly and unskillfully and thereby failed to meet the necessary and mandatory prerequisites for the issuance of Certificates of Occupancy relative to the premises.

122.    By his/her/their/its aforesaid conduct, Defendants failed to exercise the ordinary skill and knowledge possessed by building/fire/safety inspectors and political subdivisions managers and/or officials within in the community.

123.    By reason of the foregoing negligence of the Defendants, jointly and severally, Plaintiffs have sustained losses and damages as aforesaid.

124.    Defendant's conduct, jointly and severally as aforesaid, was the proximate cause of Plaintiffs' losses and damages.

125.    Plaintiffs aver that the acts and omissions of the Defendants, as set forth herein, were outrageous, because of their evil motive and/or their deliberate and reckless indifference to the rights of the Plaintiffs and others similarly situated. As such, Plaintiffs aver that they are also entitled to an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, both

jointly and severally, in their capacities as agents, servants and employees of Defendant

Norristown Borough, as well as in their individual and personal capacities in an amount deemed

fair, just and equitable, exclusive of punitive damages, along with punitive damages, costs,

interest and attorneys fees, and such other relief as may be available under law.

Respectfully submitted,

Charles D. Mandracchia, Esquire
Attorney I.D. No. 52844
Mandracchia & McWhirk, LLC
2024 Cressman Road
P.O. Box 1229
Skippack, PA 19474
610-584-0700

Attorneys for Plaintiffs

Dated: May 4, 2012

26