IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CUSTOMERS BANK, et al.,                :    CIVIL ACTION
                                       :    NO. 12-2471
          Plaintiffs,                  :
                                       :
     v.                                :
                                       :
MUNICIPALITY OF NORRISTOWN, et al.,:
                                       :
          Defendants.                  :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              APRIL 26, 2013


          Customers Bank, Ryan Shofield, Paula Diane Peyton,

Ellen Frank, Theresa Derby, Kelly Doyle, Jason Raysor, Edwina

Monaghan, and Kim Crayton (collectively "Plaintiffs") filed the

instant action against the following eighteen defendants on May

4, 2012: 1) the Municipality of Norristown ("Norristown");

2) the Solicitor for Norristown, Sean Kilkenny; 3) Code

Enforcement Department Supervisor and Acting Building Inspector,

Charles Picard; 4) Director of Planning and Community

Development and Director of the Building Department, Jayne

Musonye; 5) Fire Battalion Chief Remillard; 6) Interim Borough

Manager Russell Bono; 7) Borough Manager David Forrest; 8)

Remington, Vernick, and Beach Engineers ("RVB"); 9) Employee of

RVB, Christopher Fazio; 10) Employee of RVB, John Pasquale; 11)

Building Inspector and Building Code Official, Lynn Bixler; 12)

Design Professional of Record, Walter Wyckoff; 13) Yerkes Associates, Inc. ("Yerkes Associates"); 14) Employee of Yerkes Associates, Tom Kelley; 15) Employee of Yerkes Associates, Vincent J. DiMartini; 16) Victory Fire Protection, Inc. ("Victory Fire"); 17) All State Design Group, Inc. ("All State Design"); and 18) Jane Does/John Does Nos. 1-50 (all defendants, collectively, "Defendants").

Plaintiffs filed a second amended complaint, the operative complaint in this action, on August 20, 2012. ECF No. 67. All defendants except Walter Wyckoff have moved to dismiss Plaintiffs' complaint. Defendant Wyckoff filed an answer on August 23, 2009. ECF No. 69. The following motions to dismiss are pending and ripe for disposition:

(1) Defendant Sean Kilkenny's Motion to Dismiss, ECF No. 68;

(2) Joint Motion to Dismiss, filed by Defendants Municipality of Norristown, Charles Picard, Jayne Musonye, Lynn Bixler, Battalion Chief Remillard, Russell Bono, and David Forrest, ECF No. 74;

(3) Joint Motion to Dismiss, filed by Defendants RVB, Christopher Fazio, and John Pasquale, ECF No. 75;

(4) Joint Motion to Dismiss, filed by Defendants Yerkes Associates, Tom Kelley, and Vincent J. DiMartini, ECF No. 85;

(5) Defendant Victory Fire Protection's Motion to Dismiss,

ECF No. 104; and

(6) Defendant All State Design Group's Motion to Dismiss, ECF
No. 83.

## I. FACTUAL BACKGROUND[1]

On June 9, 2006, Fazio Properties Rittenhouse Club,
LLC ("Fazio Properties") borrowed $2.5 million dollars from St.
Edmonds Federal Savings Bank to construct a condominium
building, located at 770 Sandy Street in Norristown, Montgomery
County, Pennsylvania ("the Property"). Pls.' Consolidated Reply
to Defs.' Mot. to Dismiss 5, ECF No. 89. From the outset,
Plaintiff Customers Bank was an interested participant in the
St. Edmond's loan, owning a portion of the loan pursuant to a
participation agreement with St. Edmond's. Id.

On or about November 15, 2006, Fazio Properties filed
a Declaration of Condominium, submitting the Property to the
provisions of the Pennsylvania Uniform Condominium Act. Id.
Fazio Properties then constructed the Property with 26
residential units. Id. at 6. As set forth below, in building the
Property, Fazio failed to comply with numerous provisions of the
Uniform Construction Code, which ultimately led to the state
court criminal prosecution of several individuals.
Notwithstanding violations of the Uniform Construction Code and

---

[1]     The facts set forth herein are viewed in the light
most favorable to Plaintiff.

3

other deficiencies in the Property, between April 2007 and
January 2009, eight units within the Property were sold to the
eight Plaintiffs in the instant action. Id. Customers Bank made
loans to purchasers of four other units and retained first
mortgages on those units, while St. Edmond's retained a first
mortgage interest on fourteen units. Id. By operation of law,
Beneficial Bancorp, Inc., was the original successor in interest
to the St. Edmond's loans; however, Beneficial subsequently
assigned its interests and rights against Fazio Properties
Rittenhouse to Plaintiff Customers, effective May 4, 2012. Id.

Fazio Properties defaulted on the loan, and judgment
was entered against it on February 24, 2010. Id. In May 2010,
Defendant Norristown, exercising its police power, issued a
notice of condemnation regarding the Property. Further,
Defendant Norristown filed a complaint and a petition for a
preliminary injunction in the Court of Common Pleas of
Montgomery Country seeking condemnation of the Property. Id.
Defendant Norristown sought to have the residents removed from
their homes because the Property presented a threat to the
health, safety, and welfare of the people as a result of
structural deficiencies and code violations caused by Fazio. Id.
In support of its petition for a preliminary injunction,
Defendant Norristown submitted a report from Defendant RVB's
engineers, dated April 12, 2010, and a report from Defendant

Yerkes Associates, authored by Defendant Vincent DiMartini and dated May 4, 2010. Id.

The report submitted by Defendant RVB identified numerous structural deficiencies and safety issues in the Property. Id. at 6-7. The report submitted by Defendant Yerkes identified significant fire safety issues, ultimately concluding that the building lacked adequate fire protection and could not be inhabited. Id. at 7.

On May 18, 2010, Montgomery County Court of Common Pleas Senior Judge William Nicholas condemned the Property and directed all residents to leave the Property by May 21, 2010. Id. Homeowner-Plaintiffs were displaced for more than two years—from May 21, 2010 until the condemnation order was lifted on August 17, 2012. Id. at 7-8. Even after, however, many of the units remained uninhabitable because of construction debris and incomplete remediation. Id. at 8.

Plaintiffs allege that Defendant Norristown has filed approximately 19 separate municipal lien claims regarding parcels at the Property where Plaintiff Customers Bank holds the first mortgage lien. Second Am. Compl. ¶ 55. According to Plaintiffs, in the Montgomery County Litigation Defendant Norristown argued that its municipal lien claims have automatic first priority status as a matter of law over the mortgage lien

of Plaintiff Customers Bank.[2] Id.

At some time prior to June 22, 2010, Defendant Norristown commissioned Keystone Municipal Services to conduct an audit and issue a report regarding the Property (the "Keystone Report"), specifically addressing the issuance of permits and inspection procedures, as well as the issuance of Use and Occupancy Certificates. Id. ¶ 61. Plaintiffs allege that the Keystone Report identifies numerous violations of Pennsylvania's Uniform Construction Code ("UCC") revealing that Fazio Properties permitted the building to be built with numerous defects, due to lack of appropriate inspection under the UCC. Id. ¶¶ 63-73. Specifically Plaintiffs allege that Defendant Norristown failed to utilize certified inspectors, to conduct mandatory inspections under the UCC, and to have

---

[2]     The practical effect of the liens is twofold: (1) they render the individual properties unmarketable in that the value of the liens exceeds the collective value of the properties; and (2) they make the balance of the individual properties unmarketable in that potential buyers are unable to obtain financing.

Plaintiffs do not claim that Defendant Norristown's acts were ultra vires but rather contend that since Defendant Norristown was allegedly responsible for Plaintiffs' injuries, it should not have placed liens on the Property. However, finding no constitutional violation, see infra Sections III.A, III.B, and III.C, the Court will not reach the question of whether, under state law, Defendant Norristown should have placed municipal liens on the Property. This matter is apparently before the state court in related litigation. See Municipality of Norristown v. Rittenhouse Club Condo. Assoc., No. 2010-12077 (Pa. Commw. Ct. 2010).

authorized personnel signing permits. Id. ¶¶ 124-129.

Plaintiffs bring the following seven counts against eighteen different defendants:

(1) Count I: Violation of 42 U.S.C. § 1983, against Defendants Norristown, Kilkenny, Picard, Musonye, Battalion Chief Remillard, Bixler, Bono, Forrest, RVB, Fazio, Pasquale, Yerkes, DiMartini, Kelley, and All State Design;

(2) Count II: Fraud, against Defendants Norristown, Kilkenny, Picard, Musonye, Battalion Chief Remillard, Bixler, Bono, Forrest, RVB, Fazio, Pasquale, Yerkes Associates, Dimartini, Kelley, and All State Design;

(3) Count III: Negligence, against all Defendants;

(4) Count IV: Negligence, against Defendants Norristown, Bono, Forrest, Musonye, and Bixler (collectively "Norristown Construction Professionals");

(5) Count V: Negligence, against Defendants Fazio, Pasquale, RVB, Kelley, DiMartini, Yerkes Associates, and All State Design (collectively "Norristown Hired Professionals");

(6) Count VI: Negligence, against Defendants Wyckoff and Victory Fire (collectively "Builder Hired Professionals"); and

(7) Count VII: Trespass to Property and/or Taking, against all Defendants

All Defendants except Walter Wyckoff have moved to dismiss all of Plaintiffs' claims. These motions are now ripe for disposition.

## II.  LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (internal citations omitted). In order to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citation omitted). Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Twombly, 550 U.S. at 555).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the court is to limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

After reviewing the second amended complaint, Defendants' motions, and Plaintiffs' responses, and hearing oral argument on April 11, 2013, the Court has determined that Plaintiffs' federal claims should be dismissed. Having dismissed all federal claims, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may

decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."); Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Court will dismiss Plaintiffs' federal claims for the reasons that follow.

To state a viable claim for relief under 42 U.S.C. § 1983, a plaintiff must prove: (1) "that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States"; and (2) "that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). "[T]o prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005).

Plaintiffs allege three constitutional claims against selected Defendants (all defendants except Defendants Wyckoff and Victory Fire) in Count I: (1) a violation of the Fourteenth Amendment's Substantive Due Process Clause; (2) a violation of the Equal Protection Clause; and (3) a violation of the Takings

Clause. Because the Court finds that none of Plaintiffs' allegations are sufficient to plead a constitutional violation, the Court need not reach the question of whether certain private entities named in the Complaint are state actors, or whether any Defendants are entitled to qualified immunity or a good faith defense. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1277 (3d Cir. 1994)..

      A.    Substantive Due Process Violations

      To establish a claim for a violation of substantive due process in the use and enjoyment of property, Plaintiffs must show that their protected property interest was deprived by conduct that was so arbitrary or egregious as to "shock the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998). Only the most egregious official conduct will be found to shock the conscience. United Artists Theatre Circuit, Inc v. Township of Warrington, PA, 316 F.3d 392, 399 (3d Cir. 2003). "[T]he standard's stringency reflects maintenance of the proper proportions of constitutional, as opposed to ordinary tort violations." Blain v. Township of Radnor, 167 Fed. App'x 330, 333 (3d Cir. 2006). In County of Sacramento v. Lewis, the Supreme Court stated:

> We have . . . rejected the lowest common denominator
> of customary tort liability as any mark of
> sufficiently shocking conduct, and have held that the

Constitution does not guarantee due care on the part
of state officials; liability for negligently
inflicted harm is categorically beneath the threshold
of constitutional due process. . . . It is, on the
contrary, behavior at the other end of the culpability
spectrum that would most probably support a
substantive due process claim; conduct intended to
injure in some way unjustifiable by any government
interest is the sort of official action most likely to
rise to the conscience shocking level. . . .
Whether the point of the conscience shocking is
reached when injuries are produced with culpability
falling within the middle range, following from
something more than negligence but less than
intentional conduct, such as recklessness or gross
negligence . . . is a matter for closer calls.

523 U.S. at 834 (1998). Whether an executive action is
conscience shocking depends on the context in which it takes
place. Schieber v. City of Philadelphia, 320 F.3d 409, 417 (3d
Cir. 2003). Thus conduct which is conscience shocking in one set
of circumstances might fail to shock the conscience in another.
See id. ("In particular, the degree of culpability required to
meet the 'shock the conscience' standard depends upon the
particular circumstances that confront those acting on the
state's behalf.").

The Third Circuit has identified three standards that
can support a finding that government action shocks the
conscience: (1) deliberate indifference; (2) gross negligence or
arbitrariness; or (3) intent to cause harm. Phillips v. County
of Allegheny, 515 F.3d 224, 241 (3d Cir. 2008) (citing Sanford

v. Stiles, 456 F.3d 298, 306 (3d Cir. 2006)).[3] In hyper-

pressurized environments calling for a state actor's instant

judgment, such as a high-speed police chase, intent to harm must

be found to give rise to liability under the Fourteenth

Amendment. Lewis, 523 U.S. at 854. Where state actors must act

quickly, but have some time to deliberate—for instance, a social

---

[3]     Though Phillips and Sanford are both cases involving
state-created danger, the analysis regarding what shocks the
conscience is derived from general substantive due process
cases, not involving state-created danger. See Sanford, 456 F.3d
at 306 (discussing Lewis and Miller v. City of Philadelphia, 174
F.3d 368, 375 (3d Cir. 1999), cases not involving state-created
danger). The analysis of Phillips and Sanford has therefore been
applied by district courts in general substantive due process
cases. See, e.g., MFS Inc. v. DiLazaro, 771 F. Supp. 2d 382, 439
(E.D. Pa. 2011)(applying three standards delineated in
Phillips).

    To the extent that Plaintiffs suggest a state-created
danger claim in this case, such a claim is easily dismissed.
Under the state-created danger doctrine, plaintiffs must meet a
four-part test: "(1) the harm ultimately caused to the plaintiff
was foreseeable and fairly direct; (2) the state-actor acted in
willful disregard for the plaintiff's safety; (3) there was some
relationship between the state and the plaintiff; and (4) the
state-actor used his authority to create an opportunity for
danger that otherwise would not have existed." Phillips, 515
F.3d at 235. Without even considering the other prongs of
analysis, Plaintiffs' claim fails on the fourth prong, as the
danger in this case was affirmatively created by the Property's
developers, Fazio Properties, who built the property in
violation of the Uniform Construction Code, and not by Defendant
Norristown's alleged failure to prevent injury to Plaintiffs.
See Rodriquez v. City Of Phila., 350 F. App'x 710, 713 (3d Cir.
2009) ("We have previously considered [] attempts by litigants
to 'recharacterize [a state actor's] failures as affirmative
actions,' and have consistently held that a plaintiff must show
more than the government's 'failure to prevent' an injury in
order to prevail on a state-created danger claim.") (quoting
Sanford, 456 F.3d at 312).

worker acting to separate a parent and child—"the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness." Miller v. City of Philadelphia, 174 F.3d 368, 375-76 (3d Cir. 1999). Finally, where state actors have "the luxury of proceeding in a deliberate fashion . . . deliberate indifference may be sufficient to shock the conscience." Estate of Smith v. Marasco, 430 F.3d 140, 153 (3d Cir. 2005); see also Kaucher v. County of Bucks, 455 F.3d 418, 426 (3d Cir. 2006) (failing to find deliberate indifference of correctional facility with respect to spread of infection among inmates and officers); A.M. ex rel J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572 (3d Cir. 2004) (applying deliberate indifference standard with respect to juvenile detainee's welfare); Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002) (applying deliberate indifference standard with respect to prison inmates' welfare); Nicini v. Morra, 212 F.3d 798, 810 (3d Cir. 2000) (applying deliberate indifference standard with respect to care for foster child).[4]

---

[4]       Notably, the Third Circuit has only applied the "deliberate indifference" standard in the context of injury to wards of the state. In a non-precedential opinion, the Third Circuit suggested that the "deliberate indifference" standard might not constitute "conscience shocking" behavior in the land-use setting: "Given that [t]he assessment of what constitutes conscience-shocking behavior differs according to the factual setting, the test may be more easily satisfied in a prison

In _Lewis_, the Supreme Court contrasted the conduct of
police officers engaged in a pursuit with that of prison
officials facing liability under the Eighth Amendment for their
deliberate indifference to the medical needs of prisoners. 523
U.S. at 851. The Court stated that "in the custodial situation
of a prison, forethought about an inmate's welfare is not only
feasible but obligatory under a regime that incapacitates a
prisoner to exercise ordinary responsibility for his own
welfare." _Id._ The Court held that the "[r]ules of due process
are not . . . subject to mechanical application in unfamiliar
territory. Deliberate indifference that shocks in one
environment may not be so patently egregious in another . . ."
_Id._ at 850.

In applying the "deliberate indifference" test, the

---

setting than in a land-use setting." _Lindquist v. Buckingham
Twp._, 106 Fed. App'x 768, 775 (3d Cir. 2004). Nonetheless,
district courts have applied the deliberate indifference
standard in land-use cases. _See, e.g.,_ _Beard v. Borough of
Duncansville_, 652 F. Supp. 2d 611, 616, 624-25 (W.D. Pa. 2009)
(holding that reasonable jury could find deliberate
indifference, and therefore substantive due process violation,
where city filed declaration of taking, condemning permanent
easement over portions of property owned by plaintiffs, after
being advised via court order that it did not have statutory
authority to support action).

At this juncture, and under the circumstances of this
case, the Court need not decide whether the less exacting
standard of "deliberate indifference" is sufficient to "shock
the conscience" in land-use cases, because Defendants' actions
do not even rise to the level of "deliberate indifference."

Third Circuit has looked to the definition of "deliberate indifference" employed in Eighth Amendment jurisprudence—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The Third Circuit, however, has not yet decided whether an objective or subjective standard of liability should apply in substantive due process cases. Id. ("This case does not require us to determine whether an official's failure to act in light of a risk of which the official should have known, as opposed to failure to act in light of an actually known risk, constitutes deliberately indifferent conduct in this setting."). The Court need not reach a determination on this issue in the instant action, as Defendants were neither objectively, nor subjectively deliberately indifferent.

Here, Plaintiffs argue that deliberate indifference would be sufficient to shock the conscience because Defendants had ample time to deliberate in their decisions. Plaintiffs argue that "the defendants' lack of training and complete and deliberate indifference regarding the mandates of the UCC requiring inspections by qualified people was the direct cause of the Plaintiffs losing their property rights for over two years following the condemnation of the building." Pls.'

Consolidated Resp. 57, ECF No. 89. Plaintiffs state that "the defendants collectively engaged in a pattern and course of conduct that without exception rises to a shock the conscience level" because they attempted to advance the construction project without regard to the health, safety, or welfare of those who would ultimately reside in the Property. Id.

Though Defendants' collective failure to comply with the UCC might have ultimately led to a "catastrophe," Pls.' Consolidated Resp. 58, no single Defendant's conduct constituted deliberate indifference. In short, the factual allegations point to sheer incompetence and negligence but do not support a claim of deliberate indifference.

## 1. Defendant Kilkenny

Plaintiffs allege that Defendant Kilkenny directed Use and Occupancy Certificates to be issued when he was aware of objections and concerns raised by Fire Chief Tom O'Donnell. Pls.' Consolidated Resp. 16. The Keystone Report, which Plaintiffs have incorporated into their Complaint, indicates that there was simply a misunderstanding between the various actors involved in issuing the Certificates. See Pls.' Surreply, Ex. 1, Keystone Report 16 ("Inspector Picard has stated that he felt this was a mandate from the municipal solicitor and that he and Fire Chief O'Donnell were being directed by Mr. Kilkenny to issue the Use and Occupancy Certificates, while Mr. Kilkenny

perceived himself serving as a facilitator who was moving the project forward while stating that the fire and life safety issues need to be addressed."). Defendant Kilkenny's failure to clarify his role in the project, at worst, could be described as negligent, and therefore does not give rise to liability under the Fourteenth Amendment.

### 2.  Defendant Bixler

Plaintiffs allege that Defendant Bixler personally approved the developer's building plan containing a cost estimate of $17 per square foot, when the minimum cost of a building the scope of the Property should have been $94 per square foot. Pls.' Consolidated Resp. 11. Furthermore, Plaintiffs claim that Defendant Bixler failed to retain copies of the original building plans, as mandated by the UCC. Id. at 46. It appears that Defendant Bixler acted incompetently, but she did not show conscious disregard for Plaintiffs' property rights. Defendant Bixler's actions therefore do not rise to the level of deliberate indifference.

### 3.  Defendant Musonye

Plaintiffs make the broad allegation that Defendant Musonye, as the head of the Municipality's building department, "had no building inspection experience; [] was not qualified under the UCC; and, [] had no understanding of the process or

18

enabling legislation associated with the issuance of permits, performance of inspections or the issuance of Use and Occupancy Certificates." Id. at 12. Essentially, Plaintiffs argue that as a result of Defendant Musonye's incompetence, Use and Occupancy certificates were inappropriately issued and records were not maintained. Id. at 12-13. Though Defendant Musonye's actions appear to be negligent, she had no reason to believe that they would lead to the eventual condemnation of Plaintiffs' property. She was not acting in conscious disregard of this outcome, because had it not been for the unforeseeable failure of numerous other actors, it never would have taken place. Therefore, her conduct was not conscious and did not rise to the level of deliberate indifference.

4.    Defendant Picard

Plaintiffs allege that Defendant Picard was saddled with the responsibilities of "Acting Building Inspector" when he was not a certified BCO. Id. at 12. They argue that he did not properly perform inspections under the UCC and that "[a]t several stages during the project, [he] stated that he did not feel qualified to perform the inspections for all phases of the construction." Id. Like Defendant Musonye, Plaintiffs essentially claim that Defendant Picard was incompetent and unqualified to perform his duties. This is not enough to show that he was deliberately indifferent to Plaintiffs'

constitutional rights.

### 5. Defendant Battalion Chief Remillard

Plaintiffs state that Defendant Battalion Chief
Remillard left a fire inspection of the Property to answer a
fire call. Id. at 13. They allege that acting building code
inspector "Picard left this chaotic exercise with the impression
that Remillard had given the 'okay' to issue Use and Occupancy
Certificates." Id. Plaintiffs further allege that even though
Defendant Remillard had issued a memo describing problems
existing at the Property, Defendant Picard still issued the Use
and Occupancy Certificates. Id. Finally, Plaintiffs allege that
Defendant Remillard signed a Suppression System pressure test
form when there were still deficiencies in the Property. Id. at
14. At most, Plaintiffs have stated a case of negligence against
Defendant Battalion Chief Remillard. They have not stated any
facts to show that he was deliberately indifferent to their
property rights.

### 6. Defendant Borough Manager Forrest

Plaintiffs state that Defendant Forrest was Borough
Manager for three years, and in that time failed to secure a
certified Building Code Official ("BCO") as required by the UCC.
Id. at 49. They further claim that he failed to place adequately
trained and qualified personnel within Norristown's Building and
Codes Department, and to employ qualified third party

inspectors. Id. Again, Plaintiffs have failed to show how
Defendant Forrest's negligent execution of his duties amounts to
deliberate indifference to their property rights. Plaintiffs
fail to show the requisite mental state to successfully plead a
constitutional violation.

### 7.    Defendant Interim Borough Manager Bono

Plaintiffs allege that Defendant Bono knew Norristown
needed a certified BCO but allowed inspections to continue
without one. Id. at 50. When the individual that Defendant Bono
was training to become a BCO refused the job, Defendant Bono
took no action to secure a new certified BCO. Id. Although the
facts pleaded point to Defendant Bono's negligence, they do not
show him to have been in conscious disregard of Plaintiffs'
constitutional rights.

### 8.    Defendants RVB, Pasquale, and Fazio

Plaintiffs claim that the RVB Defendants failed to
carry out inspections of the Property that properly adhered to
the UCC's requirements. Id. at 52. Plaintiffs state that the RVB
Defendants were not certified BCOs, but nevertheless performed
UCC-mandated inspections, which the UCC required be performed by
a BCO. Id. That the RVB Defendants might have been unqualified
to or even negligently performed inspections does not show
deliberate indifference to Plaintiffs' constitutional rights.

9.  Defendants Yerkes Associates, DiMartini, and
    Kelley

Like the RVB Defendants, Plaintiffs allege that the
Yerkes Defendants conducted sloppy inspections, which did not
properly adhere to the UCC. Specifically, Plaintiffs allege that
Defendants failed to report that the fire exit stairway in the
Property was constructed of wood. Id. at 53. At worst, this
conduct amounts to negligence.

10.  Defendant All State Design

Plaintiffs argue that Defendant All State Design, the
company that reviewed the Property's fire suppression plans,
lacked the proper qualifications to do so. Id. at 23.
Plaintiffs claim that as a result, the plans did not meet the
standards mandated by the UCC. Id. Defendant All State Design's
alleged mistakes in performing their duties, however, do not
constitute deliberate indifference to Plaintiffs' rights; once
again, at most, Plaintiffs have stated a claim of negligence.

                *    *    *    *    *

The best that can be said of Defendants' collective
disregard for the UCC is that each Defendant stands as a link in
a chain of negligence. It is telling that Plaintiffs must point
to the actions of Defendants collectively to establish that they
were deliberately indifferent to Plaintiffs' property rights in
a manner that was conscience shocking as no action by any

individual Defendant meets this high threshold.[5] The "shock the
conscience" standard is intentionally narrow and must be applied
to the conduct of each Defendant individually, as state law
violations are not meant to be equated with constitutional
violations. By aggregating individual acts of negligence,
Plaintiffs fail to state a claim of deliberate indifference
against each defendant. Under these circumstances, the Court
will dismiss Plaintiffs' § 1983 substantive due process claims
against Defendants.

B.    Monell Claims Against the Municipality of Norristown

A municipality is liable under 42 U.S.C. § 1983 when a
plaintiff demonstrates that the municipality, itself, through
the implementation of a municipal policy or custom, causes a
constitutional violation. Monell v. Dep't of Soc. Servs. Of
N.Y., 436 U.S. 658, 691 (1978). A government policy or custom
may be established where a "'decisionmaker possess[ing] final
authority to establish municipal policy with respect to the
action' issues an official proclamation, policy, or edict," or
where "a policymaker is responsible . . . through acquiescence,
for the custom." Andrews v. City of Phila., 895 F.2d 1469, 1480
(3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S.

---

[5]      Under Section 1983, there is no respondeat superior or
vicarious liability. Monell v. Department of Social Services of
City of New York, 436 U.S. 658, 691-92 (1978); City of Canton v.
Harris, 489 U.S. 378, 385 (1989).

469, 481 (1986).

Absent an unconstitutional policy, a municipality's failure to properly train its employees and officers can also create an actionable violation of a party's constitutional rights under § 1983. <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." <u>Id.</u> at 389. "When city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1361 (2011). The Supreme Court has stated that, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." <u>Id.</u> at 1359.

Plaintiffs argue that the individual municipal Defendants, and Defendant Kilkenny, specifically, implemented a policy that led to the deprivation of Plaintiffs' constitutional rights. Plaintiffs have not established, however, that a constitutional violation actually occurred. Without an underlying constitutional violation, there can be no claim under <u>Monell</u>. See <u>Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986); see

also <u>Collins v. Harker Heights</u>, 503 U.S. 115, 122 (1992)
(emphasizing the separate character of the inquiry into the
question of municipal responsibility and the question of whether
a constitutional violation has occurred).

Even assuming the existence of a constitutional
injury, Plaintiffs have not pointed to a policy or custom
propagated by Defendant Kilkenny, or any other Defendant, for
which the municipality could be held liable. Plaintiffs list the
following customs as existing within the municipality: (1) the
forging of signatures by secretaries on permits, inspections
forms, and Use and Occupancy Certificates; (2) the failure to
maintain proper inspection records; (3) the failure to operate
with a BCO as mandated by the UCC; (4) the failure to hire
generally qualified personnel; (5) the failure to properly
perform inspections; and (6) the failure to properly issue Use
and Occupancy Certificates. Pls.' Consolidated Resp. 71.

First, Plaintiffs have not shown that these alleged
practices are relevant because they pre-existed the incident
with the Property, or that they were ongoing such that they
could be considered customs of the municipality. Second, other
than Defendant Kilkenny, Plaintiff does not specify a single
decision-maker to whom these alleged policies could also be
attributed; The Complaint lacks a single allegation suggesting
that the Borough Solicitor, Defendant Kilkenny, could be

25

considered a policymaker within the city's Building and Codes Department.[6]

Plaintiffs also raise a failure to train argument, but do not show that the city was on notice of the need for training, or specify what training would have prevented the alleged constitutional violation. Unless the city had constructive or actual notice of the need for training its employees, its failure to train cannot be viewed as a conscious choice, as required to plead Monell liability. For these reasons, Plaintiffs' Monell claim will be dismissed.

C.    Equal Protection Violations

Plaintiffs' equal protection claim arises under a "class of one" theory. To state a claim for a "class of one," a plaintiff must at minimum show "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for such treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To plead such a

---

[6]    Plaintiffs argue that Defendant Kilkenny acquiesced to the absence of a certified BCO in the Building and Codes Department. But this was not within his purview as Borough Solicitor. See 53 Pa. C.S. § 46117. Nevertheless, Plaintiffs repeatedly argue that Defendant Kilkenny allegedly directed that a Use and Occupancy Certificate be issued, as proof that he had taken on authority outside the traditional role of a Borough Solicitor. Even assuming, arguendo, that Defendant Kilkenny actually directed that the Certificate be issued, such conduct would not render him a policymaker within the Building and Codes Department.

claim, the Third Circuit has specifically required that a plaintiff plead facts demonstrating how properties are similarly situated. County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 171 (3d Cir. 2006). Properties are similarly situated when they are "alike in all relevant respects." Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation omitted).

Plaintiffs argue that they were treated differently from other homeowners because they "were sold condominium units that were not issued permits in accordance with the UCC, were not properly inspected, were improperly issued Use and Occupancy Certificates, and were ultimately condemned for more than two years." Pls.' Consolidated Resp. 62. They further claim that there was no rational basis for Norristown to file municipal lien claims against the units on which Plaintiff Customers Bank held first mortgages, but not to file such lien claims against other units on which other banks held mortgages. Id. Defendants argue that Plaintiffs have not identified other property owners who were treated differently from Plaintiffs. Def. Norristown et al.'s Mot. to Dismiss 17, ECF No. 74.

In their response to the motions to dismiss, Plaintiffs point to a multi-level parking garage in Norristown which was not condemned. Pls.' Consolidated Resp. 62. Plaintiffs do not state whether the garage was constructed in the same time

27

period, or how, if at all, it could have been properly
constructed without a certified BCO to inspect it. Nor have
Plaintiffs stated how the properties are similarly situated in
all relevant respects. In the same vein, Plaintiffs have not
identified similarly situated condominium units that did not
adhere to UCC standards and on which Defendant Norristown did
not place municipal liens. The complaint pleads no facts
supporting Plaintiffs' argument that placing municipal liens on
units in the Property was arbitrary or irrational, or that
impermissible factors such as race or gender played any role in
Defendant Norristown's actions, or that spite or vindictiveness
was present. In sum, Plaintiffs fail to plead a claim for
violation of the Equal Protection Clause with the requisite
particularity under Iqbal and Twombly that makes the claim
plausible, and therefore, this claim must be dismissed as to all
Defendants.

     D.   <u>Takings Claim</u>

     Plaintiffs appear to argue that the condemnation of
the Property and imposition of municipal liens constituted a
taking. The Fifth Amendment proscribes the taking of property
for public use without just compensation. U.S. Const. amend. V.
It is well-recognized that this prohibition applies to state and
local governments under the Fourteenth Amendment. <u>See</u> <u>Chicago,</u>

Burlington & Quincy R.R. Co. v. City of Chicago, 166 U.S. 226, 239 (1897). The Third Circuit has held that the imposition of a municipal lien does not constitute a taking because, under Pennsylvania law, filing a lien does not affect the debtor's use of that property until foreclosure. Cowell v. Palmer Tp., 263 F.3d 286, 291 (3d Cir. 2001). Placing a lien on a property does not foreclose all economically viable uses of the land. Id.

The municipal liens placed on the Property clearly did not deprive the "landowner of all economically viable uses of [the] property" and therefore cannot be considered a regulatory taking. Id. As for the condemnation of the Property, Plaintiffs do not appear to dispute that this action was a valid exercise of the state's police power, as it was necessary to protect the owners' health and welfare. Moreover, the condemnation order was lifted in August 2012. Even if the condemnation of the Property were a taking, Plaintiffs' claim would not be ripe because Plaintiffs have not first availed themselves of the process for seeking just compensation, as provided by Pennsylvania's Eminent Domain Code. See 26 Pa. Cons. Stat. Ann. §§ 102, 502 (West 2013). "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation." Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195

(1985). Accordingly, Plaintiffs' takings claim will be dismissed.

## IV.  CONCLUSION

Having dismissed Plaintiffs' § 1983 claim, the only remaining claims involve questions of state law. The Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, see supra pages 9-10, and therefore will dismiss Plaintiffs' complaint in its entirety. An appropriate order will follow.